UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARK HARRIS                                                    CIVIL ACTION

VERSUS                                                        15-596-SDD-RLB

CHEM CARRIERS TOWING

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, Chem Carriers Towing ("Defendant"). Plaintiff, Mark Harris ("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the following reasons, the Court finds that Defendant's motion should be granted.

**I.    FACTUAL BACKGROUND**

Plaintiff, an African-American male, began working for Defendant as a Tankerman in September 2012.[4] Defendant's Human Resources Director, Steve Turner ("Turner"), hired Plaintiff immediately following an in-person interview. Defendant is a Louisiana-based company engaged in the business of inland marine liquid transportation.[5] Defendant operated two vessels, and Plaintiff was assigned to the JW Banta under the direction of Captain John Devaux ("Devaux").[6] Defendant claims that, while Devaux directed the operations on the vessel, he lacked the authority to make ultimate

---

[1] Rec. Doc. No. 34.
[2] Rec. Doc. No. 37.
[3] Rec. Doc. No. 40.
[4] Rec. Doc. No. 34-4, Declaration of Steve Turner, ¶ 4.
[5] *Id.* at ¶ 3.
[6] *Id.* at ¶ 4.
Document Number: 40916

employment decisions regarding employees, including transfer, hiring, and firing; such authority rested with Turner.[7]

Plaintiff's claims arise out of an incident which began on May 13, 2013, while Plaintiff was in the third week of a twenty-eight day hitch[8] near Port Lavaca, Texas. Plaintiff testified that he and Steve Robin ("Robin") were tying a rope onto a barge – known as "catching a line" - when Devaux, believing the men were not working fast enough, began yelling and cursing at them over the boat radio.[9] Plaintiff claims that, later that evening or the next morning, Devaux approached him regarding the situation from the day before, and Plaintiff apologized and said he would do better.[10] Plaintiff also claims that Devaux advised that he had already spoken to Robin about the incident.[11] Plaintiff contends that Devaux rejected any apology or chance for improvement and advised Plaintiff that he was going home because he didn't know what he was doing.[12]

Although Plaintiff denies that he voluntarily resigned his employment, following the exchange between Plaintiff and Devaux, Plaintiff claims he called Turner and asked for help in making arrangements to exit the boat since no preparations were readily available to exit the boat mid-hitch.[13] Plaintiff testified that Turner responded, "Mark, I can't do that. That would be a slap in the Captain's face if I do that to Captain John."[14] Plaintiff claims

---

[7] *Id.*
[8] Defendant explains that "[a] hitch is the period of time that crew members are out on the water operating a vessel. It is common within the industry for crewmembers to work approximately thirty-days on the vessel and then have fourteen days off of work. (Pl. 65) In this case, plaintiff was nearing the end of his hitch prior to the incident on May 14, 2013. (Pl. 93) He had approximately one week remaining on the vessel before his scheduled two weeks off. (Pl 93)." Rec. Doc. No. 34-1, p. 2, n 3.
[9] *See* Rec. Doc. No. 34-2, Deposition of Mark Anthony Harris, pp. 88-91.
[10] *Id.*, Deposition of Mark Anthony Harris, p. 92.
[11] *Id.*
[12] *Id.*
[13] Rec. Doc. No. 34-2, Deposition of Mark Anthony Harris, pp. 92-93.
[14] *Id.*, Rec. Doc. No. 34-2, Deposition of Mark Anthony Harris, p. 93, lines 2-4.

that Turner told Devaux about this exchange, and Devaux was "furious" after Turner advised him what the Plaintiff had said about getting off the boat.[15] Plaintiff contends Devaux "came out there to pick a fight with me,"[16] told Robin to drop the skiff and take Plaintiff to shore,[17] and told Plaintiff "get off my boat now."[18]

Devaux and Robin told Turner a very different story. Immediately after Plaintiff left the JW Banta, Devaux contacted Turner and advised that it was Plaintiff who became irate and demanded to leave the boat.[19] Turner directed both Devaux and Robin to provide written statements of what transpired; Turner contends Robin's statement corroborated Devaux's statement of the events.[20] Based on all the information provided to him, and his "prior knowledge that Harris had been anti-social,"[21] Turner believed it was likely that Plaintiff got upset and demanded to leave, thus resigning his position with Defendant.[22] Turner also stated that, before leaving the boat, Plaintiff expressed his unhappiness and asked to be transferred to another boat; however, at the time of this request, the only other vessel available was fully staffed.[23] Turner also stated that Plaintiff never asked to be reinstated to his employment.[24]

Prior to leaving the boat, Plaintiff had complained to Turner that other crew members were writing things on the work board in the kitchen that Plaintiff believed were

---

[15] *Id.*, Deposition of Mark Anthony Harris, p. 93, line 24.
[16] *Id.*, Deposition of Mark Anthony Harris, p. 93, line 25.
[17] *Id.*, Deposition of Mark Anthony Harris, p. 94, lines 20-22.
[18] *Id.*, Deposition of Mark Anthony Harris, p. 94, line 25.
[19] Rec. Doc. No. 34-4, Declaration of Steve Turner, ¶ 9.
[20] *Id.*
[21] *Id.*, ¶ 12.
[22] *Id.* Turner also declared that he received a call from Plaintiff once he reached the shore near Port Lavaca, Texas, Defendant arranged for a taxi to transport Plaintiff to the bus station, and Defendant further arranged Plaintiff's bus transport back to Baton Rouge, Louisiana. *Id.*, ¶ 11.
[23] *Id.*, ¶ 13.
[24] *Id.*, ¶ 11.

directed at him.  While Plaintiff did not report any remarks specifically referencing his race, he believed the message "duck-in/duck-out" was somehow derogatory towards him. Turner investigated this complaint and was advised by the crew members that these phrases were military references and no way referred to race.[25]

Believing that Plaintiff had resigned from his employment, Turner processed Plaintiff's resignation.[26]  Defendant maintains that Plaintiff voluntarily resigned his position, further evidenced by the fact that Plaintiff had applied for another job in March 2013 – three months prior to the incident on the JW Banta – and began working a new job only two weeks after leaving Defendant.[27]

Plaintiff subsequently filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dismissed on June 16, 2015 after finding no violation.  Plaintiff filed this lawsuit on September 8, 2015, alleging claims under Title VII of the Civil Rights Act of 1964[28] of race discrimination and racial harassment (hostile work environment).[29]  Plaintiff also claims he has suffered severe emotional distress[30] although he never identifies under what state or federal law he is bringing this claim.[31]

---

[25] *Id.*, ¶ 14.  Indeed, none of the remarks Plaintiff claims were racially derogatory have any known racial connotations, and Plaintiff could not explain why he believed these remarks were racially motivated.
[26] *Id.*, ¶ 8.
[27] Rec. Doc. No. 34-2, Deposition of Mark Anthony Harris, p. 32; Rec. Doc. No. 34-2, p. 54, Exhibit 13 to Deposition of Mark Anthony Harris.
[28] 42 U.S.C. § 2000e *et seq*.
[29] The Court notes that, in the *Status Report* (Rec. Doc. No. 10) filed by the Parties, Plaintiff states he has brought a claim for retaliation under Title VII; however, no such claim appears in his *Complaint* or the Charge of Discrimination filed with the EEOC.  Thus, a retaliation claim is not properly before the Court and does not appear to have been administratively exhausted.
[30] Rec. Doc. No. 1, ¶ VI (3).
[31] The parties did not address this allegations, and Plaintiff has not stated a claim for relief under federal or state law for severe emotional distress.  Therefore, to the extent any such claim has been pled, it is dismissed with prejudice.

**II.   LAW AND ANLYSIS**

**A. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[33] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[34] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[35] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[36]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[37] All reasonable factual

---

[32] Fed. R. Civ. P. 56(a).
[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[34] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[35] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[36] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[37] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

inferences are drawn in favor of the nonmoving party.[38] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[39] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[40]

### B. Hostile Work Environment Based on Race (Harassment)

Plaintiff claims he was subjected to a hostile work environment based on his race. Defendant directs the Court to Plaintiff's Charge of Discrimination filed with the EEOC. Indeed, there is no reference to a hostile work environment claim, and none of the factual allegations set forth in the Charge relate to a hostile work environment.

Under Title VII, "[a] private plaintiff must exhaust [his] administrative remedies by timely filing a charge with the EEOC and receiving a right-to-sue notice before seeking relief from the Court."[41] Generally, "[a] charge under [Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]"[42] However, the "time period is extended to 300 days if 'the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice[,]'" such as Louisiana.[43]

---

[38] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[39] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[40] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[41] *Williams v. Louisiana*, CV 14–00154–BAJ–RLB, 2015 WL 5318945, at *3 (M.D.La. Sept. 11, 2015) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002); 42 U.S.C. § 2000e–5(f)(1)).
[42] 42 U.S.C. § 2000e–5(e)(1).
[43] *Conner v. Louisiana Dep't of Health & Hosp.*, 247 Fed.Appx. 480, 481 (5th Cir. 2007).

In his *Opposition*, filed *pro se*, Plaintiff did not address the Defendant's contention that this claim was not exhausted; further, Plaintiff provided the Court with no argument or jurisprudence to support an argument that his hostile work environment claim reasonably grew out of his EEOC Charge.[44] Further, had Plaintiff properly exhausted such a claim, any hostile work environment claim would fail on the merits as Plaintiff has presented no summary judgment evidence, argument, or jurisprudence that he has satisfied a *prima facie* case of Title VII hostile work environment.[45] Accordingly, summary judgment is proper, and Plaintiff's hostile work environment claim is dismissed with prejudice.

### C. Title VII Race Discrimination

In order to survive summary judgment, a plaintiff must satisfy the *McDonnell Douglas* burden-shifting framework.[46] Under this framework, a plaintiff must first establish a *prima facie* case of discrimination.[47] If he successfully does so, the defendant must respond by setting forth its legitimate, non-discriminatory reason for firing the plaintiff.[48] If the defendant produces a legitimate reason, any presumption of discrimination raised by the plaintiff's *prima facie* case vanishes.[49] The plaintiff may still avoid summary

---

[44] *See Williams v. E.I. du Pont de Nemours & Co.*, 154 F.Supp.3d 407 (M.D. La. 2015).
[45] *Elwakin v. Target Media Partners Operating Co.,* 901 F.Supp.2d 730, 753 (E.D. La. 2012)("Here, a plaintiff must allege '(1) [racially] discriminatory intimidation, ridicule and insults which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment.' *DeAngelis v. El Paso Municipal Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.1995) (finding that four printed derogatory references directed specifically at plaintiff at irregular intervals over two and a half years did not constitute sufficient hostility as a matter of law); *Cavalier v. Clearlake Rehab. Hosp.,* 2008 WL 2047997, at *4–*5 (S.D.Tex. May 12, 2008) (extending *DeAngelis* hostile work environment test to case involving allegations of racial discrimination). Additionally, in the employer must (5) know or have reason to know about the discrimination. *Jones v. Flagship International*, 793 F.2d 714, 721 (5th Cir.1986).").
[46] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[47] *Id.*
[48] *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).
[49] *Id.*

judgment if he "offers sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motives alternative)."[50]

1. *Prima Facie* Case

The Plaintiff must first establish a *prima facie* case of discrimination by showing that he (1) is a member of a protected class, (2) was qualified for the position, (3) was subjected to an adverse employment action, and (4) that others similarly situated were treated more favorably under nearly identical circumstances.[51] Plaintiff has failed to articulate that he has established a *prima facie* case of race discrimination. Defendants contend that Plaintiff was not subjected to an adverse employment action because he resigned from employment, and Plaintiff was not treated less favorably than similarly situated comparators. Nevertheless, Defendant maintains that, even if Plaintiff could establish a *prima facie* case of race discrimination, he fails to rebut or show pretext in Defendant's legitimate, non-discriminatory reason for his termination.

Applying the law to the undisputed facts of this case, the Court finds that Defendant is entitled to summary judgment on Plaintiff's race discrimination claims. First, Plaintiff failed to follow the Local Rules and controvert Defendant's *Statement of Uncontested*

---

[50] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).
[51] *Id.*

Document Number: 40916

*Material Facts*;[52] thus, those facts are deemed admitted.[53] The Court acknowledges that "*pro se* pleadings are held to less stringent standards than pleadings drafted by lawyers,"[54] and "*pro se* pleadings must be treated liberally;"[55] however, "a *pro se* litigant is not 'exempt ... from compliance with the relevant rules of procedural and substantive law.'[56] A *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer."[57]

Further, Plaintiff failed to satisfy the Federal Rules of Civil Procedure and the Local Rules of Court for the Middle District of Louisiana with his *Opposition*. Plaintiff makes the following statements in opposition to Defendant's *Motion for Summary Judgment*: (1) he was the only African-American crew member on the dates in question;[58] (2) he was fired from his employment based on "inconsistent alleged reasons to Tennessee and Louisiana state workforce commission";[59] (3) two months prior to the incident, Plaintiff was rated "MASTER" in his performance evaluation;[60] (4) Plaintiff "was ordered off the boat, stating you're fired due to the anger and (drug-related) rage" after Plaintiff talked to Turner;[61] and (5) Plaintiff was "subject to a hostile work environment for about 9 month[s] working on board. Being singled out for unsafe/dangerous, inhumane treatment and severe

---

[52] Rec. Doc. No. 34-5.
[53] *See* Local Rule 56(b); *Bagneris v. Cain*, No. 13-431-SDD, 2015 WL 4644610 at *5 (M.D.La. Aug. 4, 2015).
[54] *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).
[55] *U.S. v. Robinson*, 78 F.3d 172, 174 (5th Cir.1996); *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004).
[56] *NCO Financial Systems, Inc. v. Harper–Horsley*, No.07–4247, 2008 WL 2277843 at *3 (E.D.La. May 29, 2008), quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981).
[57] *Id.*, citing *Birl*, 660 F.2d at 593.
[58] Rec. Doc. No. 37-4, p. 16.
[59] *Id.*
[60] *Id.*, p. 17.
[61] *Id.*

violations of my Civil Rights of Discrimination of employment."[62] The opposition memorandum fails to cite to any jurisprudence to support his claims and further fails to address or rebut any of the legal arguments made by Defendant in support of summary judgment.

Plaintiff makes only conclusory statements and directs the Court to "see attached documents" which include highlighted portions of depositions along with a plethora of other documents. Indeed, Defendant complains that Plaintiff has attached a variety of documents that contain inadmissible hearsay, lack authentication/foundation, and contain handwritten notations that were not on the documents produced in discovery. The Court notes that, regardless of the Court's consideration of the documents submitted by Plaintiff, he has still failed to meet his burden on summary judgment to demonstrate the existence of a genuine issue of material fact.

### 2. Legitimate, Non-discriminatory Reason/Pretext

Notwithstanding the Court's finding above, assuming Plaintiff could meet his *prima facie* burden, Defendant has presented a legitimate, non-discriminatory reason for Plaintiff's termination. To survive summary judgment, Plaintiff must present competent summary judgment evidence of pretext. "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."[63] The key issue with pretext is whether the employer's justification, "even if incorrect, was the real reason for the plaintiff's termination. A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's

---

[62] *Id.*, p. 18.
[63] *Palacios v. Crystal City*, 634 Fed.Appx. 399, 402 (5th Cir. 2015) (citation omitted).

asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[64]

Assuming *arguendo* that Plaintiff satisfied his burden to establish a *prima facie* case of race discrimination, although he failed to address any of these elements, the Court finds that Defendant has presented a legitimate, non-discriminatory reason for processing Plaintiff's termination/resignation. Turner believed that Plaintiff had resigned his employment when he demanded to leave the JW Banta. The dispute between Plaintiff and Devaux/Robin as to how this incident occurred is immaterial to the issue of whether Turner reasonably believed the information, and such information formed the basis for the employment decision without regard to Plaintiff's race.

Defendant cites the Fifth Circuit's decision in *Waggoner v. City of Garland, Tex.*,[65] wherein the court held that, where "the employer begins an investigation and discharges an employee based on complaints lodged by one or more other employees,"

> [t]he validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee. The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal. Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.[66]

---

[64] *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015)(citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,147-148 (2000)).
[65] 987 F.2d 1160 (5th Cir. 1993).
[66] *Id.* at 1165-66. (The Eleventh Circuit recently set forth this rule in detail in *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir.1991). We have discussed this rule in the analogous cases alleging retaliatory firing. *See, e.g., Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir.1986) (holding that employer who fired employee for soliciting co-workers to join lawsuit needed only a good faith belief that employee had actually engaged in the solicitation); *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 854 n. 6 (5th Cir.1982) ("Whether St. Joseph was wrong in its determination that she should have checked is irrelevant, as long as its belief, though erroneous, was the basis for termination."); *Dickerson v. Metropolitan Dade County*, 659 F.2d 574, 581 (5th Cir.1981) (Unit B) ("Even if DERM were wrong in its evaluation of the seriousness of the injury and

Further, even if Turner was incorrect in his belief, such failure would not establish pretext because, as the Fifth Circuit has directed: "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."[67]

Thus, Plaintiff must produce summary judgment evidence that Turner did not in good faith believe the statements of Devaux and Robin, but rather relied on them in a bad faith pretext to discrimination against him on the basis of his race. Plaintiff has failed both to make such an argument and to support such an argument with summary judgment evidence. The record is devoid of evidence that Turner ever made any racially motivated comments towards Plaintiff or treated similarly situated Caucasian employees more favorably.[68]

Plaintiff argues that two Caucasian employees were treated more favorably than he was. While Plaintiff has failed to argue or present summary judgment evidence that these employees were similarly situated to him and/or disciplined under similar circumstances, the Court will consider these claims. First, Plaintiff contends that he was denied a request to transfer to another boat when his comparator, Dana Haynes, was allowed to transfer to another vessel. Defendant has presented summary judgment evidence that the circumstances under which Haynes was allowed to transfer were not

---

the justiciability of the absences, it did not violate Title VII if it acted on the reasonable belief about the absences.") *Id.* at 1166, n 21.
[67] *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir.1995).
[68] Indeed, Plaintiff offers only his own subjective belief that the behavior and/or comments of other crew members towards him was racially motivated. Further, by his own admission, Plaintiff's issues with Devaux arose when Plaintiff expressed disinterest in Devaux's alleged recommendation that he take the anti-depressant Lexapro. Plaintiff stated that: "There was nothing racially said during this time and he treated me fine." Rec. Doc. No. 34-2, p. 49 (Exhibit 5 to Deposition of Mark Anthony Harris).

Document Number: 40916

Page 12 of 14

"nearly identical" to those of Plaintiff.  At the time Plaintiff requested transfer, the very date of the May 13, 2013 confrontation with Devaux, Turner attested that Defendant had no other vessels with Tankerman positions available on that date.[69]  In contrast, Haynes' transfer request occurred several months prior to this date, following an altercation with Devaux, and a position was available on another vessel.[70]  Further, that Haynes requested to leave the vessel following a heated confrontation with Devaux undermines Plaintiff's argument that Devaux targeted Plaintiff because of his race.  Plaintiff's deposition testimony confirms that Devaux was "yelling and screaming and cussing"[71] at Haynes which resulted in Haynes' request to transfer to another vessel.  In the Court's view, this evidence supports a finding that Devaux treated African-Americans and Caucasians similarly with respect to work mistakes.

Plaintiff also contends that Steve Robin made the same mistakes in attempting to connect the line to the barge as he did, yet Robin was not terminated.  However, Plaintiff's own testimony confirms that Devaux admonished both Robin and Plaintiff over the boat radio during the incident.[72]  Plaintiff also acknowledged that Devaux spoke to himself and Robin separately after the incident, and Plaintiff cannot state whether Devaux was more or less harsh with Robin.[73]  Defendant maintains that Plaintiff was not fired; rather, Plaintiff voluntarily resigned from his position.  Thus, Defendant contends Plaintiff and Robin were not treated differently.  While this is clearly a disputed fact, the Court finds it immaterial to the current motion for the reasons set forth above:  the issue is whether

---

[69] Rec. Doc. No. 34-4, ¶ 13.
[70] *Id.*, ¶ 15.
[71] Rec. Doc. No. 37-2, p. 43, Deposition of Mark Anthony Harris, p. 121, line 9.
[72] *Id.*, Deposition of Mark Anthony Harris, p. 91.
[73] *Id.*, Deposition of Mark Anthony Harris, p. 92.

Turner reasonably believed Plaintiff resigned notwithstanding Plaintiff's race.

## III.  CONCLUSION

For the reasons set forth above, Defendant's *Motion for Summary Judgment*[74] is GRANTED.  Plaintiff's claims are dismissed with prejudice.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 18th day of September, 2017.

_____
**SHELLY D. DICK, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[74] Rec. Doc. No. 14.
Document Number: 40916